Good morning, and may it please the court, my name is Kate Baxter-Kauf. I'm here on behalf of plaintiffs and the putative classes against both Papa John's and Bloomingdales. I'd like to reserve five minutes for rebuttal, and I'll watch the time. Just remember you'll need to pay attention to the clock and make sure you reserve your time. Thank you, Your Honor. So both Papa John's and Bloomingdales electronically surveyed and wiretapped Missouri citizens as they browsed their websites and mobile apps to shop, in both cases in situations that allowed for or required local delivery. Both companies then used the data they collected to target Missouri citizens with advertisements, often locally situated. Plaintiffs suffered privacy invasions when Papa John's or Bloomingdales wiretapped them without their consent. In both cases, the district court erroneously dismissed the case. Papa John's was dismissed for lack of personal jurisdiction, despite Papa John's extensive contacts with Missouri, including 49 brick-and-mortar stores. In doing so, the district court failed to recognize the close connection between the company's physical presence in the state and its digital footprint. Bloomingdales was dismissed for lack of Article III standing, but Ms. Jones alleged an injury in fact that closely resembles the common law privacy tort of intrusion upon seclusion and of eavesdropping. As the Supreme Court recognized in TransUnion, this tort exemplifies the kind of intangible concrete injury that allows a plaintiff to sue in federal court. On appeal, both Bloomingdales and Papa John's argue that the court lacks both personal and subject matter jurisdiction. Both are wrong. I was planning to start with subject matter jurisdiction unless your honors would prefer I start somewhere else. Proceed as you see fit. So, plaintiffs sued in federal court to vindicate the crime and create privacy harms they suffered. Session replay technology is new, but invasion of privacy claims are not. They're some of the oldest claims that common law courts in England and the United States have heard. I think everyone is familiar with the Article III standing requirements, right? An injury in fact that is traceable to the defendant's conduct and redressable by a favorable verdict. Here, the only question is whether there's injury in fact. None of the other prongs have been determined. Congress, in order to establish that there is an injury in fact, there needs to be a real injury. That injury needs to be concrete and not speculative, but intangible harms are included, such as reputational harms, disclosure of private information, and intrusion upon seclusion. In this instance, both the plaintiffs in the Papa John's litigation and in the Bloomingdale's litigation make the argument that their privacy harms are analogous to the privacy harms that are in both an intrusion upon seclusion claim and an eavesdropping claim. Both of which are pretty straightforward privacy claims and for which there is an analogous harm at common law. I think the biggest question that courts have grappled with in the wake of TransUnion and that the defendants raised in at least one of the briefs is how it is that this court evaluates whether something is analogous to the common law claim. What is your common law analogy? So we think there are two. It's an intrusion upon seclusion claim and an eavesdropping claim. And both of those are recognizable at common law. There's more case law on the intrusion upon seclusion claim. So how was your seclusion intruded upon? So the argument is that the plaintiffs have a right to privacy in their devices and in the browser usage on that devices and that that was intruded upon by the defendant's use of a third party, a session replay provider, that went into those devices and tracked the information that they put together. So it doesn't matter what kind of information was recorded or extracted? Any kind of information would be an intrusion on seclusion? No, it does not. So it matters that you allege that that information is private, but the nature of the privacy is not at issue. And I think TransUnion is especially instructive on that case. So in TransUnion, the information that was disclosed was about the status of people and whether they were necessarily included on terrorist watch lists. But the case that the Supreme Court cited in doing that is a case called Davis, where the information that was disclosed was the amount of money spent in a campaign, which isn't a type of thing that one would necessarily think would be private information. And a wiretap claim, which this is an electronic wiretap claim, doesn't depend on the content of the wiretap at all. If a third party listens to your telephone conversation, the content of that telephone conversation is not relevant to the analysis. Aren't there different expectations of privacy when one uses a telephone as opposed to when one voluntarily logs into a website? I mean, you're not claiming that they can't follow you around and look at what you looked at and pay attention to what you were browsing at, or are you? Because they're not invading your computer at all. If you're on their website and you're moving around and say, OK, I clicked on this pair of pants, and then I clicked on this shirt, and then, boy, this piece of crystal looks really interesting, I clicked on that. I mean, that's accessing their information, their data, and they can follow you around on that point all they want, can't they? Well, so I think we're talking about two different things. We are talking about two different things, but what we're really talking about is a single thing. What is your actual expectation of privacy here? So I think the expectation of privacy does not include the addition of third parties. So Papa John's and Bloomingdale's aren't the ones who follow you around on their website. They engage a third party that they do not tell consumers about that is a session replay provider that provides that information, not just for your use of the Papa John's website or the Bloomingdale's website, but everything else you do on the Internet that is put together in a dossier that is then sold for money by both the third party and also that the defendants use in order to make a profit in their regard, too, to target advertisements, to attempt to get you to purchase additional things. That's the difference, right? It can't be a wiretap unless there's a third party involved, right? If it weren't, then yes, you're right. That's an agreement between you and the website. But the introduction of the third party is where we claim that it's illegal. So they could gather all this information themselves and sell it to whomever they felt like? Well, I think that there's a limitation on the ability of companies to do that because they would not be able to put it together with other websites that they don't own, right? So one of the allegations that we make in the complaint is that the reason why that information is valuable and the reason why the privacy harm is compounded is because it's not just a customer service question or a function of the website question, which is what the defendants argue, right? Like, we want to make sure that the box that you send the customer service thing to us works, right? It's not just that. It is also that they want to compile a dossier on all of your shopping for other third parties. So that if you like a crystal thing on the Bloomingdale's website or the Macy's website, maybe you can also be targeted by Nordstrom or maybe you can also be targeted by Amazon or other companies that aren't the people that got that information in the first place. So what are some examples of this information that Bloomingdale's or Papa John's or the third party that they permitted to record this information? Can you give some examples? So the complaint examples that we use are... So it records every... So the session replay provider records everything that a customer does on the website. That includes... All the keystrokes. All keystrokes. All mouse movements. All hovering. Obviously, anytime you buy something. Anytime you look at something and decide not to buy something. Anytime you put it in your shopping cart. It also includes situations where a customer would type information into a box asking for a question and then delete that information and never send it to the company at all. Which means that it's tracking information that a customer explicitly did not intend to send to the company or intended not to have them out. And then it compiles that information and the third party company uses it as like a data broker to collect that information together and then sell it as a dossier. This would not include things like bank account numbers? It depends on how the website is set up. It can include... With respect to these defendants, are you alleging that they were... That this information was recording like personal bank account numbers? So we allege that the system is capable of recording personal bank account information, transaction information. If it's a website where you would purchase... These are both retailers, right? So I can't think of a circumstance where you would put your health information into the Bloomingdale's website. But session replay providers are capable of doing that. We do not have... That is not publicly available on their website. We would need discovery to know to confirm whether or not that's happening. We allege that it is possible for them to do so. And that it is a routine part of the practice of session replay providers to take all the information they have available and use it to get as much information as they possibly can about any individual. So the other question is, whatever it is, whatever these keystrokes would indicate, how can you assert that there's any kind of expectation that that will remain private when you've turned it over to Bloomingdale's and, in these two cases, Bloomingdale's and Papa John's? Yeah, because respectfully, I disagree that there's not the same expectation of privacy in a telephone call as there is in the use of a specific portion of the internet. And the reason for that is the statutes cover that same information and whether we have a claim under them is a separate question. But you intended to give that information to Bloomingdale's, not third parties. The same way that when I call somebody on the phone... Excuse me, counsel. You mentioned third parties. There are two different third parties here. Yes. Does that make a difference? No. Okay. Our understanding of the industry is that there's a handful of companies that provide this service. Okay, just wanted to make sure. Yes. Thank you. So, respectfully, I don't believe that there is a difference between those things because the customer intends to give that information to the website that they visit, not to any person to which it could be given later. Is that reasonable? Yes. Is that a reasonable expectation? Yes. And if so, why is it reasonable? What would be the evidence that could support that expectation? Well, I think it's still relatively uncommon for websites to use this kind of technology. I think it's a pretty new situation. And the fact that there are large portions of privacy advocates and folks saying that this is not what customers signed up for and that there are privacy policies that say, we'll tell you when it is we do this and then companies do not, indicate that customers do not expect this kind of invasion of their privacy. I also think it's an active choice made by a company. So it's not something that comes with the website. It's not something that you get automatically. Both Papa John's and Bloomingdale's had to contract for the service and pay for it. And they get something out of it and the third-party company gets something out of it. But customers weren't consulted about it at all. And large portions of websites do not use this technology and do not engage in this kind of behavior. So I think the default would be that that is not something that customers thought that they were signing up for when they went to a website. So what would be, to follow up on Judge Erickson's question, what would be the difference in these situations that you're talking about here that are the subject of these actions and a merchant simply watching you as a shopper in their store on the store-wide video camera recording system and noting everything that you put in your shopping cart? Sure. And even then taking that information and giving it to a third-party. What's the difference? Well, I think that if they give it to a third-party, that may or may not be a wiretap. I don't know that it is because of the way that the statutes are written. I do think that there's a difference between going into the public and making a purchase or walking around a store, in part because there are limitations on the physical environment that don't exist on the electronic environment the same way that there aren't for telephones. Limitations on what? There are just limitations on the physical environment. So surveillance cameras are only capable of seeing the things that they're pointed at. When they're done writ large over the store, they can only see what happens in front of those cameras. And they don't record each individual shopper individually. And if they did, the person would be able to see that they were there. And that's not true when it comes to electronic surveillance. It's hidden, and it's done in a way that can't be detected by customers. I will stop there unless you all have other questions. Thank you very much. Thank you very much. The appellees, Mr. Mosher. Thank you. Thank you, Your Honor. I may have pleased the court. We heard a lot of the discussion right now about what could be captured or things that session replay code is capable of capturing. But, you know, starting with standing, which is what a lot of the discussion has been about this morning, what the Bloomingdale's Court held in dismissing the case for lack of standing is didn't consider what's capable or what's possible. It recognized that the plaintiff herself needs to allege an injury in fact. Hypothetical injuries to other plaintiffs aren't enough to get this plaintiff in court. And so what did this plaintiff allege? What the court in Bloomingdale said, there's no allegation here that you provided your name, your address, your telephone number. There's no allegation that you made a purchase, no allegation that you provided banking information, credit card information. We can set all that to the side. In another case, you might have to analyze that differently for standing. All we have here is an allegation that I went on the website and I scrolled and I clicked. And so the question is, are the movements in navigating a website, are that the allegation that the website itself captured that information, is that enough to establish Article III standing? And we think the answer is no. These allegations don't include even, I mean, it's apparently not the user remains anonymous. Isn't that right? Certainly. According to the allegation. Yes, certainly at that stage, right? It might be different if you got to the point where you entered your name, your address. The allegation here is supposed to happen immediately when you get on the site. And I think it's important to, I want to raise first, what would happen if this was enough? If this was enough to establish standing? The complaint is lengthy about the capabilities of session replay code, how websites work. But if you really drill down, what does the plaintiff say she did and what happened to her? And the only allegation we have is that she visited a website. If that's enough to get into federal court, anyone in this courtroom, anyone in this state with a minute or two on their phone could file this same complaint, allege that they're entitled to $10,000 both for themselves, for everyone else in the country that has visited the website. With just taking out your phone, opening a browser, typing in a website that uses technology like this, you could become the named plaintiff in a punitive class action seeking billions of dollars with just a minute on the site. And the courts were correct to say that's not enough. We're setting aside the plaintiff who says, I entered in my credit card information, it got captured, somebody stole it. The question here on standing, is it enough that I went on the website and I scrolled around? As the questions we heard before went to, the question is, do you have a reasonable expectation of privacy in those movements? We would say you don't. One, you're obviously voluntarily giving that information to the website owner. But I think importantly, you should know that you have to convey that information for the website to work. When you click on a link, the website operator needs to know what link you clicked on in order to give you a different page to help your navigation of the website. What the Ninth Circuit said in the Forrester case is that you can't have a reasonable expectation of privacy in the to or the from on an email or the IP address of a website you're visiting because you should know that if you want your email to get to the intended recipient, you need to disclose who you're sending it to. That's information that needs to be used to make the email reach its intended recipient. It's the similar analysis the Supreme Court used in Smith v. Maryland. It said somebody can't have a reasonable expectation of privacy in a telephone number they dial because the telephone company needs to know what number you're dialing in order to complete the call. The same thing here with your movements on a website. The website operator needs to know what link you're clicking on, whether you're scrolling, just to make the website function the way it's supposed to. They talk about the fact, well, that might be okay, you've shared to Bloomingdale's, but what about the fact that you've agreed to share the information with a third party? I think we have a few responses to that. The first is that if the information itself is not private or entitled to a reasonable expectation of privacy, then there couldn't really be any restriction or any injury caused by sharing it with third parties. But even if we said there could be some privacy interest in the information itself, once you have chosen to voluntarily convey that information to somebody else, you no longer have a reasonable expectation that they are not going to convey it to other people. That's pretty well established in the Fourth Circuit reasonable expectation of privacy context. If you turn over private information, disclose it to one party, you've taken the risk that they're going to disclose it to others. The courts in the Fletcher v. Price-Chopper case, where it was looking at a claim involving intrusion upon seclusion, which is the underlying tort that they're trying to analogize to, there the allegations were that the plaintiff was fired. She had told some of her co-workers that she had a medical condition. The co-workers told her boss she got fired because of it. And what the court said is your medical information may be private, but once you choose to make it the topic of office conversation by telling your co-workers, you've got to know that your co-workers may tell your boss. So once you've voluntarily disclosed it to some people, you've lost your reasonable expectation of privacy in that information. Well, I mean, I see what you're saying, but couldn't it be the case that you might confide something in somebody and expect them to keep it confidential? Why wouldn't that? I mean, I see what you're saying, but why couldn't you say the opposite? If the person, if you confide it in a person and they agreed that they would keep it a secret and then they didn't, that might be a different situation. And in this context, that would look a lot more like the cases out of the Third Circuit and the Ninth Circuit where they have said that there could be a standing issue where a website says we're not going to collect a particular type of information, and then they in fact collect it. There's no allegation of that type here. And here, in fact, the defendants have privacy policies that say that they collect information, they share it with third parties. And I think going back to the fact that this claim is really about just navigating the website apart from any purchase, there's no allegation of purchase is made here. And I think it's important to understand they obviously have sophisticated counsel in explaining why the claim is pled that way. At the bottom of the homepage on both sites, there's a link to the privacy policy. If you click on that, you're going to see that both sites, they can collect your information, they can share it with third parties. But what the allegation is, before I've even gotten to the bottom of the page where I could read it, I've already scrolled. You've already collected that. You've already invaded my privacy. And then I think maybe more importantly, if you make a purchase on either website, make a purchase from Bloomingdale's, make a purchase from Papa John's, you have to agree to the terms of the privacy policy to make that purchase. So you've agreed that your information will be collected. It can be shared with third parties. And so that's why I think it's important for them to have a claim because obviously it has to be an unauthorized collection of data. By the time they've made a purchase, they've authorized the collection of data. So they're focusing on the initial interaction with the website. The other issue that they run into, and you can see allegations on this issue at paragraphs 58 and 59 of the Bloomingdale's complaint, is that by default, Full Story, the session replay provider here, masks information typed onto the website. So by default, if you type information into a website using Full Story's software, it's going to be masked and Full Story is not going to get access to the actual information. That's why there's no allegations of, I typed information into the form, you collected this information from me. It would run into this problem of masking. What the complaint says in paragraph 59 is that even with masking enabled, Full Story still captures the links you click on, the movements you make on the website. And so limiting the claim to links and movements on the website is a way, in their mind, to kind of take the masking issue off the table. But that runs them into this problem. They need to establish a reasonable expectation of privacy and an intrusion upon that when a website operator gets information about the way they want to use the website. I think Judge Erickson, the questions you were asking go right to the point. You couldn't expect that the website operator wouldn't know that you scrolled on the page or you clicked a link. If they didn't find out that you clicked a link, they couldn't give you the page you want to see. They need that information to know what other page to send to you from the server. And then I guess turning briefly to personal jurisdiction, the same issue for both of these. Is busy data the words that the user types into this during the search? Is that masked? By default, it would be. There's no allegations to that effect here because there's no allegations that they typed any words into a search. And so we're not saying that this is pleading the complaint to the extent that we would ask the court to rule on it. I'm just giving a reason. The actual allegations in the complaint, the claim is limited to I scrolled on the website and I clicked on links. And I guess I was giving context of why. Well, that was the point of my question. You view the complaint as not including an allegation of disclosure of words that were entered, for example, into a search space. Certainly not by this plaintiff. This plaintiff has never alleged that she entered, typed any information in any text field. And as I was pointing out, if a different plaintiff. When we talk about when this complaint is very limited, it only alleges this. And the thought might be, well, why didn't they allege more? And the point is, the more they allege they did on the website, the more likely it is they're going to run into the privacy policy. I see in the complaint, at least one in this paragraph 59 you mentioned, for example, it talks about, it refers to additional, quote, additional substantive information. Is that sufficient allegation? No, because there's no. Beyond the movements of the mouse? No, because there's no, that paragraph or elsewhere doesn't allege any information that this plaintiff typed. Because you would have to look at the information. First of all, you want to look at the information that they actually typed to see whether they could claim a reasonable expectation or a legitimate expectation of privacy in that information. And then they would then also, for standing purposes, run into the issue of the fact that they were conveying that information to the website operator. But I haven't heard this morning, and I didn't hear or see in the brief, and certainly the district court's understanding was that for standing purposes in the Bloomingdale's complaint, there's no allegation of particular text typed into a field that they had a reasonable expectation of privacy on, that the transfer of that information would violate it. The case is really focused on the clicks and the scrolls. I turn to personal jurisdiction. The claims in both of these cases are really indistinguishable from the allegations in the cases that were before the First Circuit. In the Third Circuit, the First Circuit held no personal jurisdiction over Bloomingdale's. There, if anything, the allegations were stronger for the plaintiff, because there actually is a Bloomingdale's store in Massachusetts. There are no Bloomingdale's stores here. That's largely kind of beside the point, because the defendant here is Bloomingdale's.com, LLC. It's the entity that runs the website. It doesn't run brick-and-mortar stores. But in any event, at least in the other case in the First Circuit, there was an allegation that the Bloomingdale's brick-and-mortar store in Boston kind of provided a jurisdictional hook. That's absent here. But even with that jurisdictional hook in the First Circuit, the First Circuit said no purposeful availment, no personal jurisdiction. The Third Circuit, the case was Papa John's. There, the allegations went farther in that the plaintiff in Pennsylvania alleged that he did make a purchase. He did use the website or the app on his phone to order a pizza from Papa John's. It was delivered to his home in Pennsylvania. The Third Circuit still said not good enough for personal jurisdiction. It pointed out that the claims here are website-based claims. As we've talked about, they don't depend on a purchase. Your privacy is allegedly violated the second you get on the website. It doesn't matter if you make a purchase. It doesn't matter if you do anything on the website. And so for that reason, there wasn't a sufficient tie between the brick-and-mortar stores or the purchase of pizza and the actual privacy and violation alleged there. What the Third Circuit said, to satisfy Ford's related test, you need to connect. You need allegations that connect the actions of the defendant that are directed to the forum and the harm that the plaintiff suffers. And here, the alleged harm is a privacy harm from visiting a website. And there wasn't allegations to connect that to a brick-and-mortar store. Certainly, what the Third Circuit said, and we don't dispute that running a brick-and-mortar store in a forum is purposeful availment. If you alleged a slip-and-fall accident at a Papa John's store, there'd be personal jurisdiction there. If you alleged food poisoning from something, that would be a different case. That would be related to the brick-and-mortar store. But when your allegation is, I suffered privacy harm on the website, you've got to connect the website to the forum. And there's no allegation that these websites work any differently in Missouri than they do anywhere else. The tie that the plaintiffs allege to Missouri from the website is the fact that for Jones, that she was in Missouri when she accessed the website or the apps. For Ms. Tinser, the other plaintiff in the Papa John's case, there's no allegation even that she was in Missouri when she visited the site. But this court, in cases like Zazzle and Johnson v. Arden, has been clear that merely accessing a generally accessible website from the forum is not good enough to establish personal jurisdiction. The Third Circuit said that same analysis applies to Papa John's website. The First Circuit said that same analysis applies to the Bloomingdale's website. And we think the court should say the same analysis and the same result that the First and Third Circuit reached as to Bloomingdale's and Papa John's in those cases are grounds to affirm the dismissals of the cases here. Thank you. Counsel, am I right that both standing and personal jurisdiction are at play in all three of these cases? Yes. Yeah, both of them, they are in play. And because they're both go to the Article III jurisdict power, subject matter and personal jurisdiction go to the Article III authority of the court, you can go in either direction, right? One doesn't have to be decided by the other.  Thank you. Mm-hmm. Rebecca Creslet. Thank you, Your Honors. I have three things I'd like to briefly address. The first on the Article III standing question, I think that the defense counsel's characterization of this as a case of only clicks is incorrect in a couple of ways. The first is that the Supreme Court's holding in Forrester indicates that URLs and website names provide a lot of information and that that information can be considered private information that discloses a lot of information about a customer. And I think that's similarly true when we're talking about the idea that the user might be anonymous, but that's not necessarily true because it's connected to an IP address. And IP addresses tell you location, they tell you household, they tell you lots of information. So it's not an anonymous browser. It has both information about URLs, which can be private information, and also the IP address of the person. Is the IP information any different than a phone number? So let's say, for example, we just went through an election, right? If you call a campaign and you make a contribution to that campaign and you use your neighbor's credit card with their permission such that they can't really identify you, but they do identify the phone number, I guarantee you that other campaigns are going to call you and ask about contributions because politicians sell and share incoming phone call information all the time. Yeah, I can tell you there's probably a group of consumers that would be fine with that being considered a wiretap, but I'm not letting that happen. No, I mean, yes, it is absolutely the case. I think an IP address is different from a telephone number because it's not listed in a public service. It's a different kind of information, and so it's of a different kind. I also think that the—we have the next discussion. Oh, in the paragraphs about whether there's a reasonable expectation of privacy and whether this is a clicks-only case, I think that this court should take a look at the Gattelhack decision in the Seventh Circuit, which was written by then-judge, now-Justice Barrett, that talks about how the importance is that the injury be the same in kind but not of degree. And so it isn't necessary that there would be an actionable claim under intrusion upon seclusion or eavesdropping or even necessarily that there would be that same kind of information. That's up to Congress and the people of the state of Missouri to determine whether or not that information should be subject to civil liability and not Article III courts. And then the third thing I wanted to talk about was personal jurisdiction and the decisions in the Third and the First Circuit. So our contention is that those cases were wrongly decided and that this court should not follow them, and that it's also worth pointing out that there was a decision in the Ninth Circuit, Briskin v. Shopify, that my friend on the other side didn't mention, and that's because that case has been vacated. And a couple of weeks ago, the Ninth Circuit heard argument about that case. It's fairly instructive and interesting. And in those cases, I think the thing that we would point out is that the test is pretty straightforward and requires first that there be a purposeful availment of the forum, which in the case law that we've read, especially in the Eighth Circuit, can be any contact with the forum. It includes availment of the forum even that's not being referenced by the plaintiff. It's the act of voluntarily engaging in business here. And there's no question that both Bloomingdale's and Papa John's do that. It's not one zazzle purchase. That's a lot of it. And then the claim needs to relate to that. It doesn't need to be a one-to-one correlation. It doesn't need to be perfect. It just needs to connect. And here, there's no question when you order a pizza from the Papa John's app, they deliver it to you from a local store that's in the area. You can go pick up your purchase at the Macy's when you order it from Bloomingdale's. And that means there's a connection between the digital and the physical world that is where the claim comes from and is the reason why there's personal jurisdiction. Thank you. Very well. Thank you, counsel. We appreciate your arguments this morning. And the case is submitted. We'll render a decision in due course. And you may stand aside.